**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

|  |  |
|---|---|
| **RONALD HENCIN, et al.** | * |
| Plaintiffs, | * Case No.: GJH-19-2546 |
| v. | * |
| **AVANT DIAGNOSTICS, INC.** | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiffs Ronald S. Hencin ("Dr. Hencin") and Glenn D. Hoke ("Dr. Hoke") brought this action in Maryland state court against Defendant Avant Diagnostics, Inc. ("ADI") to seek redress for breach of contract and violation of the Maryland Wage Payment and Collection Law ("MWPCL"). Defendant removed the action to this Court. ECF No. 1. Now pending before the Court is the Defendant's Motion to Dismiss. ECF No. 10. No hearing is necessary. Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendant's Motion to Dismiss is granted in part and denied in part.

**I.    BACKGROUND[1]**

Plaintiffs were employees of Theranostics Health, Inc. ("THI"). ECF No. 5 ¶¶ 3, 11, 17.[2] On May 11, 2016, THI and Defendant entered into an Asset Purchase Agreement ("APA") in which Defendant purchased substantially all of THI's assets and assumed certain of its liabilities.

---

[1] For purposes of considering Defendant's Motion to Dismiss, the Court accepts the facts alleged in the Complaint as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).
[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

ECF No. 5 ¶ 5; ECF No. 10-2. THI is a Delaware corporation[3] that operated in Maryland, and Defendant is a Nevada corporation with its headquarters in Arizona. ECF No. 10-2 at 6; ECF No. 12-2 at 11, 13; ECF No. 12-4 at 13. According to the APA, the closing was to take place at 61 Broadway, 32nd Floor, New York, New York 10006. ECF No. 10-2 at 18.

According to the APA, Defendant assumed "Liabilities of Seller related to present or former employees of Seller set forth on 2.03(d) of the Disclosure Schedules in up to the amounts set forth on such Section 2.03(d) of the Disclosure Schedules, which amounts shall be payable as set forth in Section 2.03(d) of the Disclosure Schedules" as well as "those Liabilities of Seller set forth on Section 2.03(e) of the Disclosure Schedules." ECF No. 10-2 at 15. Schedule 2.03(d), in turn, lists the assumed employer liabilities as:

> 1. Current payroll accruals for all periods after March 31, 2016
> 2. Deferred compensation in the amount of $349,214.39 as of April 15, 2016, interest in the amount of $26,572.39 as of April 15, 2016, and interest accrued thereon after April 15, 2016
> 3. PTO [paid time off] balances in the amount of $121,345.08 as of April 15, 2016 and additional PTO accruals after April 15, 2016
>
> In regards to Items 2 and 3 above, such amounts will be paid by Buyer as follows: $150,000 at Closing and $50,000 per month thereafter until paid in full.

ECF No. 12-4 at 10. Schedule 2.03(e) lists additional assumed liabilities, including "[a]mounts due and payable under Seller's Visa and American Express Credit Cards," and specified that "[a]s of April 25, 2016, there was a balance of $14,247.37 on the American Express Card and $29,372.21 on the Visa Card, for a total Credit Card balance of $43,619.58." ECF No. 12-4 at 11. Defendant also took over a "Flex Space Office Lease, dated January 29, 2016, by and between Seller and Saul Holdings Limited Partnership for the premises located at 217 Perry

---

[3] Although the Complaint alleges THI is a Maryland corporation, ECF No. 5 ¶ 3, this is contradicted by the attached documents, *see* ECF No. 12-2 at 13.

Parkway, Gaithersburg, Maryland." ECF No. 12-4 at 3; ECF No. 10-2 at 73–78 (assignment and first amendment of lease).

Dr. Hencin's employment was terminated on July 20, 2016, and Dr. Hoke's on August 18, 2016. ECF No. 5 ¶¶ 12, 18. Defendant did not make the agreed-upon payments to Dr. Hencin and Dr. Hoke. ECF No. 5 ¶¶ 28, 43, 67. On July 20, 2017, Plaintiffs wrote to Defendant's President and CEO requesting that Defendant meet its obligations under the APA. ECF No. 5 ¶¶ 24–25; ECF No. 12-2 at 17–18. The letter specifically requested that Defendant pay Dr. Hencin's outstanding paid time off balance of $30,001.68 as well as accrued past wages, bonuses, and commissions in the amount of $101,680.08. ECF No. 12-2 at 17. It requested that Defendant pay Dr. Hoke's outstanding paid time off of $18,990.58, accrued wages and bonuses of $130,634.01, and credit card payments of $30,717.67. ECF No. 12-2 at 17–18. Plaintiffs made a second written demand on June 22, 2019. ECF No. 5 ¶ 27. On July 19, 2019, Plaintiffs filed suit against Defendant in the Circuit Court for Montgomery County, Maryland alleging breach of contract under the APA as well as violation of the Maryland Wage Payment and Collection Law ("MWPCL"). ECF No. 5. On September 4, 2019, Defendant removed Plaintiffs' suit on diversity grounds. ECF No. 1.

## II.   STANDARD OF REVIEW

### A.  Motion to Dismiss for Lack of Subject-Matter Jurisdiction

Defendant moves to dismiss the first and third counts, alleging breach of contract, for lack of standing. ECF No. 10-1 at 8. The plaintiff in a federal action bears the burden of demonstrating that he possesses standing to pursue his claims in federal court. "The standing doctrine has both constitutional and prudential components." *Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009). Only prudential standing is at issue in this case. Prudential standing consists

of "several judicially self-imposed limits on the exercise of federal jurisdiction." *Allen v. Wright*, 468 U.S. 737, 751 (1984). Among these limitations is the principle that a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Because standing is an element of subject-matter jurisdiction, a defendant's motion to dismiss for lack of standing should be treated under Rule 12(b)(1). The Court should grant a Rule 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). "When considering a Rule 12(b)(1) motion, the court should 'regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (quoting *Evans*, 166 F.3d at 647); *see also Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.3d 765, 768 (4th Cir. 1991).

### B.  Motion to Dismiss for Lack of Personal Jurisdiction

Defendant moves to dismiss the second and fourth counts, violations of the MWPCL, for lack of personal jurisdiction. ECF No. 10-1 at 17. A challenge to personal jurisdiction brought pursuant to Federal Rule of Civil Procedure 12(b)(2) is to be resolved by "the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989) (citation omitted). Discovery and an evidentiary hearing are not required to resolve a Rule 12(b)(2) motion, however. *See generally* 5B Wright & Miller, Federal Practice & Procedure § 1351, at 274–313 (3d ed. 2004, 2012 Supp.). Rather, the Court may, in its discretion, address

personal jurisdiction as a preliminary matter, ruling solely on the motion papers, supporting legal memoranda, affidavits, and the allegations in the complaint. *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009); *see also In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). In such a circumstance, the plaintiff need only make "a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Consulting Engineers Corp.*, 561 F.3d at 276. "In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs. Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs. Inc. v. Akzo N.V.*, 2F.3d 56, 62 (4th Cir. 1993)).

Personal jurisdiction over a nonresident defendant is proper when "(1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993); *see also* Fed. R. Civ. P. 4(k)(1)(A). "In applying Maryland's long-arm statute, federal courts often state that '[the] statutory inquiry merges with [the] constitutional inquiry.'" *Dring v. Sullivan*, 423 F. Supp. 2d 540, 544 (D. Md. 2006) (collecting cases). A court's exercise of personal jurisdiction over a defendant is consistent with due process so long as the defendant has established "minimum contacts" with the forum state such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). Put differently, the court must consider whether a defendant's contacts with the forum state are substantial enough that it "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The standard varies, depending on whether the plaintiff seeks to establish specific or general jurisdiction. "To establish general jurisdiction, the defendant's activities in the

state must have been 'continuous and systematic.'" *Carefirst of Md*, 334 F.3d at 397. To establish specific personal jurisdiction, the Fourth Circuit has applied a three factor test: "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State: (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *ALS Scan. Inc. v. Digital Serv. Consultants, Inc*., 293 F.3d 707, 712 (4th Cir. 2002).

### C. Motion to Dismiss for Failure to State a Claim Upon Which Relief can be Granted

Defendant has moved to dismiss both counts for failure to state a claim upon which relief can be granted. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "shown"—that the pleader is entitled to relief." *Id*. at 1950; *see also Simmons v. United Mortg. & Loan Invest*., 634 F.3d 754, 768 (4th Cir.2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (quotation and emphasis omitted).

A court must consider all well-pleaded allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe factual allegations in the light most

6

favorable to the plaintiff, *see Lambeth v. Bd. of Comm'rs*, 407 F.3d 266, 268 (4th Cir. 2005). Nevertheless, a court is not required to accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), conclusory allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979), or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences," *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks omitted). "Thus, 'in reviewing a motion to dismiss an action pursuant to Rule 12(b)(6) a court must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level.'" *Monroe v. City of Charlottesville*, 579 F.3d 380, 386 (4th Cir. 2009) (quoting *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009)).

### III. DISCUSSION

#### A. Breach of Contract

Defendant contends that the first and third counts of the Complaint must be dismissed for lack of prudential standing, arguing Plaintiffs are not the intended third party beneficiaries of the APA.

First, the Court must determine what state's law will apply to the interpretation of the contract. In cases arising under diversity jurisdiction, a district court applies the conflict-of-law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Maryland law, a contractual choice-of-law clause will be disregarded only if (1) the state whose law is chosen has no substantial relationship to the parties or the transaction; or (2) the strong fundamental public policy of the forum state precludes the application of the choice-of-law provision. *Am. Motorists Ins. Co. v. ARTRA Grp., Inc.*, 338 Md. 560, 572 (1995).

Here, the APA specifies, "[t]his Agreement shall be governed by and construed in accordance with the internal laws of the State of New York." ECF 10-2 at 54. "The Maryland Court of Appeals 'has long recognized the ability of contracting parties to specify in their contract that the laws of a particular State will apply in any dispute over the validity, construction, or enforceability of the contract[.]'" *Cleaning Authority, Inc. v. Neubert*, 739 F.Supp.2d 807, 818 (D.Md. 2010) (quoting *Jackson v. Pasadena Receivables*, Inc., 398 Md. 611, 617 (2007)). The closing was to take place in New York, meaning the state has a relationship to the transaction, and there are no public policy concerns preventing New York law from applying. ECF No. 10-2 at 18. Therefore, the APA will be interpreted under New York law.

Because Plaintiffs were not parties to the APA, they may only sue Defendants for breach of contract under the APA if they were the intended third party beneficiaries of the contract. Although Plaintiffs were specifically named in the Disclosure Schedules referenced in the APA, ECF No. 12-4 at 3, 19, 52, the contract also has a clear "No Third Party Beneficiary" clause:

> Except as provided in Article VIII, this Agreement is for the sole benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other Person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

ECF No. 10-2 at 54. Courts interpreting contracts under New York law have strictly enforced such "negating clauses," finding they control even where obligations to a named third party are stated elsewhere in the contract. *In re Lehman Bros. Holdings Inc*., 479 B.R. 268, 275–77 (S.D.N.Y. 2012), aff'd, 513 F. App'x 75 (2d Cir. 2013) ("[E]ven where a contract expressly sets forth obligations to specific individuals or categories of individuals, those individuals do not have standing to enforce those obligations by suing as third-party beneficiaries when the contract contains a negating clause."); *India.Com, Inc. v. Dalal*, 412 F.3d 315, 322 (2d Cir. 2005)

8

(enforcing negating clause even where stock purchase agreement identified plaintiff by name and indicated that he would be paid under a separate agreement in an attached disclosure schedule); *Union Carbide Corp. v. Siemens Westinghouse Power Corp.*, No. 99 CIV. 12003 (LMM), 2001 WL 91714, at *3 (S.D.N.Y. Feb. 2, 2001) ("Siemens maintains correctly that Union Carbide may not sue Siemens under the APA. It is well-settled under New York Law, the law that governs the Agreement in this case, that a clause precluding third-parties from claiming rights under a contract is fully enforceable as a matter of law"); *Morse/Diesel, Inc. v. Trinity Indus. Inc.*, 859 F.2d 242, 249 (2d Cir.1988) ("[W]here a provision in a contract expressly negates enforcement by third-parties, that provision is controlling."); *Katz v. Pershing, LLC*, 672 F.3d 64, 73 (1st Cir. 2012) ("The plaintiff has not pointed to any New York case in which an explicit disclaimer of third-party beneficiary claims has been overlooked for any reason, and our research has revealed none.").

Plaintiffs argue that the reference to Article VIII, which addresses indemnification, saves their claim, but Article VIII does not include any evidence of the parties' intent to make Plaintiffs third party beneficiaries of the APA; rather, it merely requires each party to the contract to indemnify the other for certain categories of claims. Therefore, Plaintiffs cannot be found to be the intended third party beneficiaries of the APA.[4]

Because Plaintiffs do not have standing to sue under the APA, their claims for breach of contract must be dismissed for lack of subject-matter jurisdiction.[5]

---

[4] While courts have found that where a party assumes liability for a contract, the third party can sue under that original contract, *see Union Carbide Corp. v. Siemens Westinghouse Power Corp.*, No. 99 CIV. 12003 (LMM), 2001 WL 91714, at *3 (S.D.N.Y. Feb. 2, 2001), Plaintiffs' Complaint cannot be fairly read to be pursuant to the employment agreement so the Court need not analyze Defendant's potential liability, if any, under that contract.
[5] Having found Plaintiffs' claims fail for lack of subject-matter jurisdiction, the Court need not address whether they also fail under Rule 12(b)(6).

### B. MWPCL Violations

Defendant moves to dismiss Plaintiffs' claims brought under the MWPCL, arguing they fail for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted. The court will address each in turn.

#### 1. Personal Jurisdiction

Defendant contends that the Court lacks personal jurisdiction over it, as Defendant does not have the requisite contacts with the state of Maryland. ECF No. 10-1 at 17–19. Looking to the pleadings, briefs, and exhibits, as permitted when ruling on personal jurisdiction, *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009), the evidence shows: THI operated in the state of Maryland and had permits and licenses for their laboratory there, ECF No. 12-2 at 13; ECF No. 12-4 at 13–16, 42; Defendant bought THI and took over the contract for THI's Maryland office, ECF No. 12-4 at 3; ECF No. 10-2 at 73–78; Defendant formed a new entity, Avant Diagnostics Acquisition Corporation, for which Plaintiffs conducted work at the Maryland Office, ECF No. 12-6 ¶¶ 9–10; Plaintiffs received W-2 forms for work conducted in Maryland for Avant Diagnostics Acquisition Corporation, ECF No. 12-6 ¶ 11; ECF No. 12-7; ECF No. 12-8; and Defendant's CEO contracted with Plaintiffs in person in Maryland concerning the APA, ECF 12-5 at ¶¶ 13–15.

Given these facts, the Court concludes that Defendant "'purposefully avail[ed]' itself of the privilege of conducting activities in the State," as it conducted business in Maryland and leased office space in the state. *ALS Scan. Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). The Court also finds Plaintiffs' claims under the MWPCL arise out of those activities: work performed in the state of Maryland at the leased office. *ALS Scan. Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). Finally, the exercise of personal

jurisdiction over Defendant in this case would be constitutionally reasonable. *See id.* Therefore, the Court has specific personal jurisdiction over Plaintiffs' second and fourth claims, those for violations of the MWPCL.

### 2. Failure to State a Claim

Defendant further contends that, even if the court has personal jurisdiction over it, Plaintiffs' MWPCL claims still fail, arguing (1) Plaintiffs failed to allege facts showing Defendant is an "employer" or that Plaintiffs are owed "wages" as defined by the MWPCL, ECF No. 10-1 at 20–22; and (2) Plaintiffs' claims are time-barred, *id.* at 23.

When ruling on a motion to dismiss under Rule 12(b)(6), the court may only look to the pleadings, "matters of public record" of which the court may take judicial notice, and documents referenced in the motion to dismiss that "are integral to the complaint and authentic." *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citations omitted). Here, in addition to the Complaint and accompanying exhibits, the Court will consider the Asset Purchase Agreement and the Disclosure Schedules to Asset Purchase Agreement, which were referenced in the Complaint itself.

The Court will not, however, take into account the affidavits and e-mails attached to Plaintiffs' Opposition to Defendant's Motion to Dismiss, nor the allegations concerning a new contract between Plaintiffs and Defendant in July 2016, raised for the first time in Plaintiffs' Opposition. *See Mylan Labs., Inc. v. Akzo*, N.V., 770 F. Supp. 1053, 1068 (D. Md. 1991) ("This allegation appears nowhere in the complaint, however, and 'it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.' The Court, therefore, restricts its consideration to allegations which do appear in the complaint.") (internal citations omitted); *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("To hold

otherwise would mean that a party could unilaterally amend a complaint at will, even without filing an amendment, and simply by raising a point in a brief.") (internal citations omitted).

### a. Factual Allegations

To survive a motion to dismiss under Rule 12(b)(6), Plaintiffs must allege sufficient facts to state a claim that is plausible on its face. With respect to a violation of the MWPCL, this requires Plaintiffs to allege that Defendant was an "employer" within the meaning of the MWPCL and failed to pay Plaintiffs "wages" owed them. The MWPCL defines "employer" as "any person who employs an individual in the State or a successor of the person." Md. Code Ann., Lab. & Empl. § 3-501(b) (emphasis added). "Wages" are defined as "all compensation that is due to an employee for employment." *Id.* § 3-501(c).

If the question were whether Plaintiffs alleged facts sufficient to state a claim against THI under the MWPCL, the answer would be clear. Plaintiffs state in the complaint that THI was their employer in fact, and the accompanying documents support this allegation. Plaintiffs are listed as THI employees in the Disclosure Schedules to the APA, along with their positions and salaries. ECF No. 12-4 at 52. THI also had a lease for office space in Maryland, ECF No. 12-2 at 73–78, was "qualified to do business" in Maryland, ECF No. 12-4 at 13, paid taxes in Montgomery County, *id.* at 56, and had various permits and licenses issued by the City of Gaithersburg, Montgomery County, and the State of Maryland related to the operation of its Maryland laboratory, *id.* at 13–16, 42, supporting a reasonable inference that Plaintiffs performed work for THI in Maryland. Therefore, Plaintiffs have alleged sufficient facts to show THI was their "employer" within the meaning of the MWPCL. The Court also finds sufficient facts alleged that the amounts Plaintiffs seek constitute "wages" under the MWPCL. The complaint alleges that Plaintiffs are owed wages, bonuses, commissions, a sum for accrued paid

time off,[6] and credit card reimbursements,[7] all of which are types of compensation well within the meaning of "wage" established in the MWPCL.

But Plaintiffs have sued Defendant, not THI. The question therefore becomes whether Defendant can be found to have stepped into THI's shoes as Plaintiffs' employer, such that it is a "successor" of THI within the meaning of the MWPCL and subject to suit for failure to pay Plaintiffs.[8] The Court of Special Appeals of Maryland has noted that "the Payment Law does not define the term 'successor,' and [ ]there are no published Maryland decisions analyzing successor liability for violations of the Payment Law." *Grindstone Capital, LLC v. Atkinson*, No. 1579 SEPT.TERM 2014, 2015 WL 6093213, at *3 (Md. Ct. Spec. App. Sept. 23, 2015). However, the court noted, "[t]he general rule in Maryland is that a successor corporation is not liable for its predecessor's legal obligations, subject only to four exceptions," one of which is "(1) there is an express or implied agreement to assume the liabilities." *Id*. (discussing *Nissen Corp. v. Miller*, 323 Md. 613, 617 (1991)).[9]

---

[6] The Court rejects Defendant's arguments that paid time off does not constitute "wages" under the MWPCL. Under the MWPCL, "wage" means "all compensation that is due to an employee for employment." Md. Code Ann., Lab. & Empl. § 3–505(c)). The law specifically references "accrued leave" and states that an employer is required to pay it unless certain exceptions are satisfied that are not contested here. Md. Code Ann., Lab. & Empl. § 3–505. Paid time off therefore may be covered under the MWPCL. *See, e.g., Karanja v. BKB Data Sys., LLC*, No. CIV.A. DKC 14-0573, 2015 WL 993462, at *8 (D. Md. Mar. 4, 2015) (denying motion for summary judgment where factual dispute remained regarding the amount owed for wages earned and PTO accrued).

[7] Reimbursement for business expenses has previously been found within the definition of wages under the MWPCL. *Roley v. Nat'l Prof'l Exch., Inc.,* No. CV TDC-18-0152, 2020 WL 4207574, at *8 (D. Md. July 22, 2020). The court found the reimbursements "still constitute[d] a 'remuneration promised for service'" and pointed to (1) the inclusion of "Business Expenses" as forms of claimable wages on the Wage Claim Form available for employees to file a claim under the MWPCL, which was prepared by the Maryland Department of Labor; and (2) the fact that a separate statutory provision excludes reimbursement for business expenses from its definition of wages, finding "[t]he fact that the Maryland General Assembly knew how to exclude travel reimbursements from the term 'wages' but declined to do so in the MWPCL reveals that it did not intend to do so." *Id.*

[8] That Defendant is not a Maryland employer is not a bar to enforcement of the MWPCL against it. *See Himes Assocs., Ltd. v. Anderson*, 178 Md. App. 504, 535, 943 A.2d 30, 48 (2008) ("The plain language of LE section 3–101 covers the situation in which a company outside of Maryland directs its employee to go to a work site in Maryland. There is nothing unclear about that language. ").

[9] This exception has been found "expressly codified" in another Maryland statute, Section 3-115(c) of the Corporations and Associations Article, Maryland Annotated Code, which provides that upon the transfer of all or substantially all assets, "the successor is liable for all the debts and obligations of the transferror to the extent

13

Here, Plaintiffs alleged sufficient facts to show Defendant, in an agreement to purchase "substantially all" of THI's assets, expressly assumed the liabilities for the unpaid wages. *See* ECF No. 5 ¶¶ 6–8; ECF No. 10-2 at 15; ECF No. 12-4 at 10–11. Thus, the Court finds that Plaintiffs have sufficiently pled that Defendant is a "successor" to THI, and thus Plaintiffs' "employer," under the MWPCL.

### b. Statute of Limitations

Because the burden of establishing an affirmative defense rests on the defendant, "a motion to dismiss filed under [Rule] 12(b)(6) . . . generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Id.*; *see also Long v. Welch & Rushe, Inc.*, 28 F.Supp.3d 446, 456 (D. Md. 2014). This is not one of those cases.

Maryland law will apply when determining the statute of limitations applicable to Plaintiffs' MWPCL claims. *See Sherwin-Williams Co. v. ARTRA Grp., Inc.*, 125 F. Supp. 2d 739, 756–57 (D. Md. 2001) ("The Maryland courts have followed the general rule that the statute of limitations of the forum state applies even when that state's choice of law rules require that another state's substantive law be applied. This is true even when, as here, the contract explicitly includes a choice of law provision specifying that out-of-forum law applies to the agreement, because the statute of limitations is a procedural, rather than a substantive, issue.") (internal citations omitted). Under Maryland law, a claim arising under the MWPCL must be filed within

---

provided in the Articles of Transfer." *Smith v. Navistar Intern. Transp. Corp.*, Civ. No. PN-86-1799, 204 (D. Md. 1988).

three years of its date of accrual. *See Butler v. VisionAIR, Inc*., 385 F. Supp. 2d 549, 553–54 (D. Md. 2005) (citing Md. Code. Ann., Cts. & Jud. Proc. § 5–101 (2002)). The MWPCL provides that a cause of action accrues two weeks after an employee's payment is due. *See Butler*, 385 F. Supp. 2d at 553 (citing Md. Code Ann., Lab. & Empl. § 3–507.1(a)). Therefore, Plaintiffs can only bring claims for wages due after July 2, 2016, three years and two weeks before they filed their Complaint.

Here, it is not clear from the Complaint and associated documents when the various wages at issue accrued. The proper date is neither May 11, 2016, when Defendant took on the obligation for the liabilities, nor the dates when Defendant agreed to pay the wages under the APA. Instead, the relevant date is that on which the wages or other compensation were first due to Plaintiff. [10] *Butler*, 385 F. Supp. 2d at 553–54. It is not yet clear on what date the wages were due, and therefore when the cause of action accrued. For example, it appears Plaintiffs' compensation had been "deferred" under an agreement with THI, ECF No. 12-4 at 52 ("Employees are voluntarily taking these [lower] salaries and accruing the difference"), but neither the Complaint nor the incorporated documents state when the deferred salary was to be paid out.

Given this uncertainty, the Court cannot decide at this stage whether Plaintiffs' claims are time-barred. *See Goodman v. Praxair, Inc*., 494 F.3d 458, 464 (4th Cir. 2007) (en banc). Therefore, Defendant's motion to dismiss is denied with respect to Plaintiffs' second and fourth claims alleging Defendant violated the MWPCL.

---

[10] The Complaint alleges that Dr. Hencin was owed the full sum of his wages on July 20, 2016, ECF No. 5 ¶¶ 12-14, and Dr. Hoke was owed his wages on August 18, 2016, *id*. ¶¶ 18-21. However, Plaintiffs' allegations in their Opposition contradict these statements and instead rely on the provision in the APA regarding the payment schedule for employment liabilities.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 10, shall be granted in part and denied in part. Plaintiffs' claims for breach of contract are dismissed, but their MWPCL claims may proceed. A separate Order follows.

Dated: September 14, 2020              /s/
                                       GEORGE J. HAZEL
                                       United States District Judge